OPINION
{¶ 1} Defendant-appellant Amir McCoy appeals from his conviction and sentence in the Richland County Court of Common Pleas on two counts of trafficking in drugs (cocaine) in the vicinity of a school zone. The plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant was indicted on two counts of trafficking in drugs (cocaine) in the vicinity of a school zone, in violation of R.C. 2925.03(A). The matter proceeded to a jury trial. However, the jury trial resulted in a hung jury.
 {¶ 3} The matter proceeded to a second trial. The following evidence was adduced at that second trial.
 {¶ 4} A confidential informant told Sergeant Robert Powers and Detective Robert Burkes of the Metrich Enforcement Agency [hereinafter Metrich], a multi-county drug task force, that he could buy drugs from appellant. The informant claimed that he had known appellant's family all of his life and had personally seen appellant sell crack cocaine, powdered cocaine and marijuana. Metrich decided to use the confidential informant to make undercover buys from appellant.
 {¶ 5} On September 17, 2003, the informant was picked up by Sergeant Powers and Detective Burkes and transported to the Metrich office. Pursuant to standard procedure, the informant was shown a photo array and asked to identify the person from whom he was going to attempt to buy drugs. The informant identified appellant. The informant was then searched and a mini-disc recorder and a body transmitter, or "wire", were placed on his person. The Metrich officers gave the informant $50.00 to make the buy and dropped him off near where appellant lived. Appellant lived with his mother within 306 feet of an elementary school.
 {¶ 6} After being dropped off, the informant walked to appellant's home and knocked on the front door. When a man answered the door, the informant asked for appellant. Appellant then came to the door and the two went outside on the front porch. The informant told appellant that he wanted to buy a fifty, which testimony showed means a $50.00 rock of crack cocaine. Appellant indicated that he only had "soft," meaning powdered cocaine. The informant then bought $50.00 worth of powdered cocaine. Sergeant Powers listened over the wire as the confidential informant and appellant conducted the transaction.
 {¶ 7} After the buy, the informant walked straight back to the control officers and handed over the drugs and the mini-disc recorder. The informant was transported to the Metrich Office where he was searched and required to give a tape recorded statement. The confidential informant was also shown a photo array from which the informant identified appellant as the person who had sold him the drugs.
 {¶ 8} The powdered cocaine, the disc from the mini-disc recorder and the wire were turned over to the Mansfield Crime Lab. The drugs were tested by Anthony Tambasco, the Crime Lab Director. The drugs tested positive for powdered cocaine in the amount of .29 grams.
 {¶ 9} On September 24, 2003, the confidential informant was used to make a second undercover drug purchase from appellant. On that date, the confidential informant was taken to the Metrich Office where he was again searched, shown a photo array, wired and given $50.00 to make the buy. Once again, the officers dropped the informant off near appellant's home. Once again, Sergeant Powers listened to the transaction over the wire.
 {¶ 10} The confidential informant knocked on the door of appellant's residence and appellant's mother answered. She informed the confidential informant that appellant was not at home.
 {¶ 11} The confidential informant walked around to the front of the house and found appellant sitting in a car with a man. Appellant was smoking marijuana and singing. The confidential informant walked up to the car and got appellant's attention. He told appellant that he needed a fifty. A voice identified as appellant's voice can be heard on the surveillance tape asking if he wants a "fish dinner," which was defined as a term for crack cocaine. Appellant then commented that the confidential informant had been spending a lot of fifties in the neighborhood. While appellant was getting the drugs, appellant's mother opened the front door and asked where appellant was. The confidential informant told her that appellant was right here in the car.
 {¶ 12} After the sale, the confidential informant turned over the $50 worth of crack cocaine to the officers. He was again taken back to the Metrich office. Once there, he was searched and he gave another recorded statement. The drugs, discs from the mini-disc recorder and the wire were turned over to the crime lab as evidence. The drugs tested positive for crack cocaine, in an amount of .20 grams.
 {¶ 13} At the conclusion of the presentation of evidence, the jury found appellant guilty on both counts of trafficking in drugs (cocaine) in the vicinity of a school zone. A sentencing hearing was held on March 28, 2005. Appellant was sentenced to a total of 17 months in prison and three years of community control.
 {¶ 14} It is from this conviction and sentence that appellant appeals, raising the following assignments of error:
 {¶ 15} "I. THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING THE PROSECUTION TO COMMIT PROSECUTORIAL MISCONDUCT DURING THE TRIAL.
 {¶ 16} "II. THE TRIAL COURT COMMITTED PLAIN ERROR BY COMMITTING JUDICIAL MISCONDUCT DURING VOIR DIRE AND TRIAL.
 {¶ 17} "III. THE JURY AND THE TRIAL COURT COMMITTED PLAIN ERROR IN FINDING THE APPELLANT GUILTY BEYOND A REASONABLE DOUBT BASED ON THE SUFFICIENCY OF THE EVIDENCE.
 {¶ 18} "IV. THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 I {¶ 19} In the first assignment of error, appellant contends that the trial court committed plain error by allowing the prosecution to commit prosecutorial misconduct during the trial. We disagree.
 {¶ 20} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990),51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990),498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168,106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 21} In this case, appellant's counsel failed to object to the alleged acts of prosecutorial misconduct. Errors not brought to the trial court's attention are waived unless such errors rise to the level of "plain error". "Plain error" is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." See State v. Underwood
(1983), 3 Ohio St.3d 12, 13, 444 N.E.2d 1332.
 {¶ 22} It is according to these standards that we review appellant's assignments of error.
 {¶ 23} First, appellant asserts that the confidential informant gave inconsistent testimony when one compares the informant's testimony at the first trial to the testimony in the second trial as it relates to conversations with people other than appellant prior to the second, alleged drug purchase. Appellant submits that the changed testimony could have been the result of the prosecution suborning testimony.
 {¶ 24} Even if this court would assume arguendo that the informant's testimony changed in any significant way between the first and second trials, it is only conjecture and speculation as to whether the prosecution encouraged the change. Accordingly, this court finds no showing of prosecutorial misconduct and no showing of prejudice to appellant as a result of an improper act by the prosecution.
 {¶ 25} Second, appellant asserts that the prosecution committed prosecutorial misconduct when the prosecution intentionally generalized the process for becoming a confidential informant and the process of completing a drug transaction. We find no error. The prosecution asked numerous questions about the informant's prior drug use, criminal record and the drug culture in the area. The informant testified about his prior prison sentence and desire to get out of the drug scene which led to his becoming a confidential informant. The informant testified, as did Sergeant Powers and Detective Burkes, regarding the procedure used in making controlled buys and the need for the informant to be known by the seller. As to the buys in this case, the informant gave detailed testimony describing the procedure and drug buy. In addition, the confidential informant was subject to cross examination. If appellant felt that any related areas were insufficiently exposed to the jury, those areas could have been addressed on cross examination. Accordingly, we find no prosecutorial misconduct and no prejudice to appellant.
 {¶ 26} Third, appellant contends that the prosecution committed misconduct when it tried to trick appellant's mother into admitting that her voice can be heard on the audio tape of the alleged, second buy of cocaine. Specifically, appellant challenges the following exchange:
 {¶ 27} "Q. Have you ever had an opportunity to listen to the tapes in this case of the two buys?
 {¶ 28} "A. I couldn't understand whatever — it was gibbery, you couldn't understand nothing. I was like what is this.
 {¶ 29} "Q. Were you aware that you [sic] son said he's pretty sure it's your voice on the recording of the second buy, that female voice, are you aware of that? That Amir thinks it's your voice on the second tape, the female voice?
 {¶ 30} "A. I wasn't in the courtroom when he made that statement. I don't know." (Tr. 263).
 {¶ 31} Appellant asserts that the prosecutor was trying to trick Ms. McCoy into admitting that it was her voice. Appellant contends that he never testified that it was his mother's voice on the tape.
 {¶ 32} However, we find that even if the question constituted prosecutorial misconduct or error, there was no prejudice to appellant. Subsequent to his mother's testimony, appellant did identify the voice on the audio tape as his mother's voice. Tr. 288. The confidential informant also identified the female voice as the voice of appellant's mother. In addition, the evidence of appellant's guilt was abundant enough that this one improper question did not make any difference in the outcome of the trial.
 {¶ 33} For the foregoing reasons, appellant's first assignment of error is overruled.
 II {¶ 34} In the second assignment of error, appellant argues that the trial court committed judicial misconduct during the voir dire and trial. We disagree.
 {¶ 35} First, appellant contends that the trial court should have sua sponte dismissed two prospective jurors, Ms. Seib and Ms. Moffett, because they both testified that they knew one or two witnesses for the prosecution. Both prospective jurors stated that they had met state's witness Tony Tambasco when Tambasco was an instructor at a police academy and the prospective jurors went through that police academy. In addition, one of those same prospective jurors, Ms. Seib, knew another witness for the prosecution, Bob Powers. The prospective juror stated that she had known Powers for years and that Powers' son was the prospective juror's boss at work. Tr. 17-19.
 {¶ 36} Appellant's counsel did not raise a challenge to these prospective jurors and the trial court seated these two prospective jurors on the jury. Appellant essentially contends that the failure to sua sponte excuse these prospective jurors was judicial misconduct.
 {¶ 37} Fairness requires impartial, indifferent jurors. Yet jurors need not be totally ignorant of the matter before them.Murphy v. Florida (1975), 421 U.S. 794, 7998-00, 95 S.Ct. 2031,44 L.Ed. 2d 598. The trial court has discretion in determining whether a juror can be impartial. State v. Williams (1983),6 Ohio St.3d 281, 288, 6 OBR 345, 351, 452 N.E.2d 1323, 1331. "Whether to disqualify a juror for cause is "a discretionary function of the trial court . . . [not reversible] on appeal absent an abuse of discretion." Berk v. Matthews (1990),53 Ohio St.3d 161, 559 N.E.2d 1301, syllabus. Further, "deference must be paid to the trial judge who sees and hears the juror."Wainwright, 469 U.S. at 426.
 {¶ 38} We find no error in the trial court's decision not to sua sponte excuse the prospective jurors. Ms. Seib and Ms. Moffet unequivocally stated their intention to be impartial and to decide the case only on the facts. The trial court was entitled to accept the prospective jurors' assurances that they would be fair and impartial and would decide the case on the basis of the evidence.
 {¶ 39} Second, appellant argues that it was judicial misconduct to allow the jurors to use transcripts of the audio tapes of the drug transactions as listening aids. Appellant argues that it was never proven that it was appellant's voice on the tapes, yet the written transcripts referred to the voice as appellant's voice.
 {¶ 40} The Ohio Supreme Court has permitted transcripts to be provided to a jury as a listening aid when no "material differences" exist between the tape and the transcript. SeeState v. Blakenship (May 22, 1985), Medina App. No. 2050. This is especially true when one of the persons on the tape recording testifies at trial so as to give independent support to the taped testimony. State v. Rogan (1994), 94 Ohio App.3d 140, 149,640 N.E.2d 535.
 {¶ 41} The confidential informant testified at trial and identified appellant as the man whose voice was on the tape and from whom he bought cocaine. Further, the trial court gave repeated cautionary instructions to the jury that the transcripts were not evidence.
 {¶ 42} Accordingly, we find no error in using the transcripts which identified a voice as appellant's voice. Doing so simply reflected the testimony of the confidential informant. Further, the repeated cautionary instructions to the jury from the court, eliminated any potential prejudicial error that might have otherwise resulted.
 {¶ 43} Accordingly, appellant's second assignment of error is overruled.
 III {¶ 44} In the third assignment of error, appellant argues that his convictions were against the sufficiency of the evidence. We disagree.
 {¶ 45} Appellant argues that the only evidence that appellant committed the offenses was the testimony of the confidential informant and that the informant was not trustworthy. Appellant points out that the police did not witness the drug transactions and the marked money was not found in appellant's possession.
 {¶ 46} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. Furthermore, since the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, para. one of syllabus.
 {¶ 47} Appellant was indicted on two counts of trafficking in cocaine, in the vicinity of a school, in violation of R.C.2925.03. That statute states the following, in relevant part: "(A) No person shall . . . [s]ell or offer to sell a controlled substance. . . . (C) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. . . . (b) Except as otherwise provided . . . in . . . this section, if the offense was committed in the vicinity of a school, . . . trafficking in cocaine is a felony of the fourth degree. . . ." R.C. 2925.03. "An offense is `committed in the vicinity of a school' if the offender commits the offense . . . within one thousand feet of the boundaries of any school premises, regardless of whether the offender knows the offense is being committed on school premises, in a school building, or within one thousand feet of the boundaries of any school premises." R.C. 2925.01(P) (in relevant part).
 {¶ 48} In this case, Sergeant Powers and Detective Burkes both testified that the confidential informant had proven to be a reliable and trustworthy informant since he began working for Metrich. Detective Burke testified that this informant made "many" drug buys for Metrich. Sergeant Powers described the informant as an "exceptional" informant. Tr. 113. That confidential informant testified in detail about how he purchased cocaine from appellant on two occasions (September 17, 2003 and September 24, 2003) and the location of those buys. Further, the confidential informant's testimony was consistent with that of the Metrich officers, including as to what they heard over the wire. Testimony showed that both substances purchased contained cocaine. The substance from the first purchase tested positive for powdered cocaine and weighed .29 grams. The substance from the second purchase tested positive for crack cocaine and weighed .20 grams.
 {¶ 49} The testimony, if believed by the jury, is sufficient to prove the appellant's guilt on both counts of trafficking in drugs beyond a reasonable doubt. Although appellant challenges the credibility of the confidential informant, the trier of fact clearly found the informant's testimony and that of the officers to be more credible than the testimony of the defense witnesses. Last, we note that the fact that the marked money was not found in appellant's possession is not persuasive. The drug buys occurred in September, 2003. Appellant was not arrested or notified of the criminal allegations until May, 2004. Thus, nearly eight months passed after the last transaction until appellant was arrested.
 {¶ 50} Accordingly, appellant's third assignment of error is overruled.
 IV {¶ 51} In the fourth and final assignment of error, appellant asserts that his trial counsel failed to provide effective assistance of counsel. We disagree.
 {¶ 52} Appellant cites several instances of alleged ineffective assistance of counsel. Those alleged instances are as follows:
 {¶ 53} A. When trial counsel did not object to leading questions posed by the prosecution to the confidential informant when he testified at trial.
 {¶ 54} B. When trial counsel did not challenge and dismiss prospective jurors because those prospective jurors knew one or two state witnesses. (See assignment of error II)
 {¶ 55} C. When trial counsel did not object at the second trial to the inconsistent testimony presented by the confidential informant which differed from the testimony the confidential informant gave at the first trial. (See assignment of error I)
 {¶ 56} D. When trial counsel did not object to the prosecution's generalizations concerning the process of becoming a confidential informant, the process of being a confidential informant and the process of completing a drug transaction on its direct examination of the confidential informant. (See assignment of error I)
 {¶ 57} E. When trial counsel did not object to the trial court's decision to allow the jurors to use transcripts of the audio tapes as listening aids. (See assignment of error II)
 {¶ 58} F. When trial counsel did not object to the prosecution trying to trick appellant's mother, Pamela McCoy, into testifying that it was her voice on the tape. (See assignment of error I)
 {¶ 59} The standard of review of an ineffective assistance of counsel claim is well established. Pursuant to Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
 {¶ 60} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. Id.
 {¶ 61} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter
(1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, citing Lockhartv. Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, 538 N.E.2d 373, quotingStrickland at 697.
 {¶ 62} A. Appellant contends that trial counsel was ineffective when he failed to object to leading questions posed by the prosecution. Evidence Rule 611(C) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." This rule places the decision whether to allow leading questions on direct examination within the trial court's discretion. See Staff Note, Evid.R. 611(C); State v. D'Ambrosio (1993),67 Ohio St.3d 185, 190, 616 N.E.2d 909, 914. For that reason, the Ohio Supreme Court has held that the failure to object to leading questions does not constitute ineffective assistance of counsel.State v. Jackson, 92 Ohio St.3d 436, 449, 751 N.E.2d 946. Further, court's have recognized that due to a trial court's broad discretion to allow leading questions, the decision to not object to leading questions is a trial strategy. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel." State v.Phillips, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643;State v. Clayton (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189.
 {¶ 63} B. Appellant claims that trial counsel was ineffective for failing to object to the prospective jurors who knew one or two of the state's witnesses. Both prospective witnesses were examined by the trial court and stated that they could serve as impartial jurors. Accordingly, as found in assignment of error II, there is no showing of error or prejudice. See R.C.2945.25(B). Further, a trial counsel's choice not to use a peremptory challenge is within the realm of trial tactics and does not, absent a showing of prejudice, deny a defendant effective assistance of counsel. See State v. Hunt (1984),20 Ohio App. 3d 310, 486 N.E.2d 108.
 {¶ 64} C. Appellant also contends that trial counsel was ineffective when counsel failed to object to the alleged inconsistent testimony of the confidential informant in regard to the second alleged buy. However, a review of the transcript of the confidential informant's testimony in each trial reveals that it was consistent on all material points and with the audio tape of the alleged buy. Accordingly, there was no basis for an objection. Thus, trial counsel was not ineffective for failing to object.
 {¶ 65} D, F. Next, appellant asserts that trial counsel was ineffective for failing to object to the prosecutor's generalizations in the direct examination of the informant and to the prosecutor's alleged use of trickery in questioning appellant's mother on cross examination. This court has found that the underlying basis of each of these claims was either not error or was not prejudicial. (See assignments of error I) Accordingly, we find no ineffective assistance of counsel.
 {¶ 66} E. Appellant also claims that trial counsel was ineffective for failing to object to the use of the transcripts of the controlled drug buy audio tapes as listening aids. However, the record reflects that appellant's trial counsel raised multiple objections regarding the use of the transcripts. Tr. 117-122; 135-136; 190-191. Accordingly, we find no merit to appellant's contention that trial counsel's failure to object constituted ineffective assistance of counsel.
 {¶ 67} For the foregoing reasons, appellant's fourth and final assignment of error is overruled.
 {¶ 68} The judgment of the Richland County Court of Appeals is affirmed.
Edwards, J. Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.